# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TERRENCE S. STEWART,** | : | CIVIL ACTION NO. 1:18-CV-2372 |
| **Plaintiff** | : | (Chief Judge Conner) |
| v. | : | |
| **ROBERT H. STEWART, JR.; KARYL STEWART GILBERT, a/k/a KARYL L. GILBERT; and GARY A. STEWART,** | : | |
| **Defendants** | : | |

## MEMORANDUM

This litigation represents one of several chapters in a longstanding internecine dispute concerning certain business and real estate interests owned by the Stewart family. Plaintiff Terrence S. Stewart asserts a single claim for breach of contract against defendants Robert H. Stewart, Jr.; Karyl Stewart Gilbert; and Gary A. Stewart. Defendants move to strike certain matter alleged in Stewart's complaint as immaterial, impertinent, and scandalous pursuant to Federal Rule of Civil Procedure 12(f).

## I.   Factual Background & Procedural History

Robert Stewart, Sr., the late patriarch of the Stewart family, died in 1989 and left various business and real estate assets to his heirs. (Doc. 1 ¶ 15). Disputes over these assets arose between two blocs of the Stewart family—plaintiff and his children (referred to by the parties as "the Stewart Family Minority") and defendants and their children (referred to by the parties as "the Stewart Family Majority"). (Id.) These disputes eventually resulted in a settlement agreement

executed on July 9, 2011, between the Stewart Family Minority and the Stewart Family Majority ("the 2011 Settlement Agreement"). (Id. ¶ 16; see Doc. 1-2). The 2011 Settlement Agreement established a framework through which the Stewart Family Majority would buy out the interests of the Stewart Family Minority over a period of years. (Doc. 1 ¶ 18; see Doc. 1-2 at 1-22). The 2011 Settlement Agreement has been amended several times in the past eight years. (See Doc. 1 ¶¶ 21, 23, 25, 27, 29, 31).

The 2011 Settlement Agreement, as amended, is a lengthy and complex document with voluminous exhibits and myriad defined terms. (See Docs. 1-1 to 1-7). Assets and interests in which the Stewart Family Minority has an ownership stake are divided into two categories. The "Minority 8(b) Interests" are partnership interests owned by the Stewart Family Minority in Principio Iron Company L.P., Sunrise Holdings, L.P., and Bob-Bob Associates L.P., together with the Stewart Family Minority's equity interest in Principio Iron Company LLC and South York Development Company. (Doc. 1-8 at 1; see also Doc. 1 ¶ 32). The "Keeper Assets" are certain real estate assets owned by each of these five entities. (Doc. 1-8 at 1; see also Doc. 1 ¶ 32).

The 2011 Settlement Agreement establishes three ways by which the Stewart Family Majority can acquire an interest of the Stewart Family Minority: (1) direct purchase by the Stewart Family Majority, (2) sale to a third party, and (3) disposition pursuant to a plan of liquidation. (Doc. 1 ¶ 38; see Doc. 1-2 at 10-14). The 2011 Settlement Agreement provides that, upon sale of a covered asset or interest, the Stewart Family Minority is responsible for its "*pro rata* share" of

2

accrued "Carry Costs" associated with the asset. (Doc. 1 ¶ 39; Doc. 1-2 at 13). Amendment No. 3 to the 2011 Settlement Agreement defines "Carry Costs" to include

> . . . all carry, maintenance, repair and construction costs and expenses relative to the Keeper Assets, said Carry Costs being substantially consistent with carry costs that were charged to the Keeper Assets over the four year period beginning January 1, 2007 ending December 31, 2010, to include but not be limited to internal Stewart Family Majority management and development fees (charged and allocated in a manner substantially similar with the historical charging and allocation practices of The Stewart Companies, <u>but</u> not to include success fees), maintenance and repair costs, property taxes, governmental assessments and impact fees, utility access and connection fees, Debt payments (including interest expenses), insurance expenses, and general development costs (said development costs to include but not be limited to any and all costs associated with rezoning, entitlements, subdivision, land development, permitting and approvals, site work construction and installation of utilities, roads and other infrastructure).

(Doc. 1 ¶ 39; Doc. 1-8 at 3). Amendment No. 3 further provides that the payout to the Stewart Family Minority at closing shall be reduced by the Minority's share of "Approved Costs," defined to mean

> . . . (a) associated Carry Costs, if any, that accrue prior to the final closing of the sale of the relevant Keeper Asset, to the extent not yet paid, in accordance with the terms of Section 8(b)(iii) of the Agreement and paragraph 3 of the Joe Clark Letter, (b) the reasonable and documented actual out-of-pocket closing costs payable to independent third parties incurred by the Stewart Family Majority or any of their Affiliates (but without duplication), in connection with the Disposing of a Keeper Asset, including but not limited to advertising costs, sales commissions, title insurance premiums, recording fees, transfer taxes, escrow fees, and any other expenses that the seller is contractually obligated to incur pursuant to a binding real estate sales

3

> agreement or Auction Agreement, (c) any Debt payoff associated with a Debt and/or Encumbrance on any Keeper Asset and identified on <u>Exhibit C</u> attached hereto (as it may be updated from time to time in accordance with the terms of this Amendment), to the extent not previously discharged, and (d) the reasonable and documented costs and expenses payable to independent third parties incurred by the Stewart Family Majority in connection with any acquisition by the Stewart Family Majority of the Minority 8(b) Interests or Keeper Assets.

(Doc. 1 ¶ 41; Doc. 1-8 at 3).

The instant matter concerns the Stewart Family Majority's sale of "Lot D," a 67.25-acre parcel of land in Principio Business Park in Cecil County, Maryland. (Doc. 1 ¶¶ 1, 60). Plaintiff has a 25% membership interest in Principio Iron Company LLC, which, until the Majority's sale of Lot D, owned a 43.438-acre portion of the lot. (Id. ¶¶ 4, 7). The Stewart Family Majority elected to sell Lot D to a third party as permitted under the 2011 Settlement Agreement. (Id. ¶ 60). On May 21, 2018, the Majority sold Lot D to a third party for $5 million. (Id. ¶¶ 61-62). According to plaintiff, the portion of the proceeds allocable to the 43.438-acre portion of Lot D was $3,232,000. (Id. ¶ 63). By plaintiff's calculation, his 25% *pro rata* share, after deductions for brokerage fees, taxes, and other closing costs, should have been more than $700,000. (Id.)

The Stewart Family Majority sent a letter to the Stewart Family Minority on June 19, 2018, enclosing a check for plaintiff's share of the proceeds in the amount of $149,629.18. (Id. ¶ 64). According to the letter, the majority deducted $2,129,000 from the Lot D sale proceeds for "payment on the loan to Sunrise Holdings L.P.," which the letter describes as "the operating loan for the project costs." (Id. ¶¶ 66-

67).  Plaintiff disagrees that these costs are deductible under Amendment No. 3's definition of "Approved Costs" and disputed the deductions in letters to the Stewart Family Majority's counsel.  (See id. ¶¶ 68-80).  To date, plaintiff has not negotiated the $149,629.18 check.  (See id. ¶ 81).

Plaintiff commenced this case asserting a single breach-of-contract claim on December 13, 2018.  Defendants move the court to strike certain allegations from the complaint pertaining to past disputes between the Stewart Family Majority and the Stewart Family Minority arising under the 2011 Settlement Agreement.  The motion is fully briefed and ripe for disposition.

## II.  Legal Standard

Pursuant to Federal Rule of Civil Procedure 12(f), a court may strike any "insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  FED. R. CIV. P. 12(f).  District courts have "considerable discretion in disposing of a Rule 12(f) motion to strike."  5C CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE & PROCEDURE § 1382 (3d ed. 2019); see Zarichny v. Complete Payment Recovery Servs., Inc., 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015).  Such motions are disfavored and will usually be denied unless the offending allegation has no relation to the action, prejudices one party, or will confuse the issues in the litigation.  5C WRIGHT & MILLER, *supra*, § 1382; see also Cipollone v. Liggett Grp., Inc., 789 F.2d 181, 188 (3d Cir. 1986).  Any doubts about the challenged material should be resolved in favor of the nonmovant.  5C WRIGHT & MILLER, *supra*, § 1382.

5

**III.    Discussion**

Defendants ask the court to strike paragraphs 5 and 45 through 59 of plaintiff's complaint as immaterial, impertinent, and scandalous.  Paragraph 5 alleges that defendants' actions pertaining to Lot D "are part of a larger pattern of conduct" through which the Stewart Family Majority, in buying out the Stewart Family Minority's interests in other jointly owned family assets, "have attempted (sometimes successfully) to deprive [p]laintiff of his fair share of the value of the assets."  (Doc. 1 ¶ 5).

Paragraphs 45 through 59 describe this alleged pattern of conduct as consisting of three prior dispositions of jointly owned Stewart family property:

- the 2014 sale of York Building Products, valuation of which defendants allegedly "drove down" by misrepresenting to their appraiser that certain land owned by York Building Products was "buffer land" not suitable for third-party development, resulting in the buffer land being assigned no value, after which the Stewart Family Majority sold the purported buffer land to third parties for "tens of millions of dollars," (id. ¶ 45);

- the 2014 auction of real property where Susquehanna Professional Center previously had its office, which auction the Stewart Family Majority allegedly failed to publicize, allowing the Majority to obtain the property, worth approximately $1.5 million, for just $1, (id. ¶ 46); and

- the 2015 liquidation auction of real property known as "Lot B," in conjunction with which the Stewart Family Majority allegedly: (i) acquired a broad, general access easement on the previously unencumbered land one week before the auction, (ii) disincentivized all potential buyers by notifying them of the easement just one day before the auction, (iii) purchased the property for themselves at the auction for $5.1 million, and (iv) resold the property six weeks after the auction for $8 million, (id. ¶¶ 47-57).

6

Plaintiff avers that the Stewart Family Majority's actions substantially reduced the value of his 25% share of the proceeds of each transaction. (Id. ¶¶ 5, 45, 46, 57). In 2015, plaintiff sued the Stewart Family Majority in this court, challenging creation of the easement encumbering Lot B as well as the subsequent sales of Lot B. (Id. ¶ 58). The parties settled that lawsuit and, as part of the settlement, Amendment No. 3 to the 2011 Settlement Agreement was born. (Id. ¶ 58; see Doc. 1-8 at 2). Among other things, Amendment No. 3 defines the terms "Approved Costs" and "Carry Costs" relative to future sales of jointly owned Stewart family assets under the 2011 Settlement Agreement. (Doc. 1 ¶¶ 39, 41; see Doc. 1-8 at 3).

In this lawsuit, plaintiff challenges deductions made by the Stewart Family Majority in calculating his 25% share of proceeds from the 2018 sale of Lot D. He contends that the Majority's substantial deductions from the Lot D proceeds "fall[] far outside the limited definition of 'Approved Costs'" in Amendment No. 3. (Doc. 1 ¶ 69). Defendants maintain that plaintiff's claim is narrow and that allegations as to past Stewart-family transactions are immaterial, impertinent, and scandalous in a case that is principally concerned with the sale of Lot D. (See Doc. 15 at 5-7; Doc. 19 at 3-10). We disagree.

None of the allegations in plaintiff's complaint can be fairly described as "scandalous." "Scandalous" matter is that which "improperly casts a derogatory light on someone, most typically on a party to the action." 5C WRIGHT & MILLER, *supra*, § 1382; see Wagner v. Holtzapple, 101 F. Supp. 3d 462, 488 (M.D. Pa. 2015). Content that merely "offends the sensibilities of the objecting party" should not be stricken if it "describe[s] acts or events that are relevant to the action." 5C WRIGHT

& MILLER, *supra*, § 1382. The Third Circuit Court of Appeals has not yet defined the term, but several district courts have said that "scandalous" material typically "reflect[s] cruelly upon [a party's] moral character," is "repulsive," or "detract[s] from the dignity of the court." Karpov v. Karpov, 307 F.R.D. 345, 349 (D. Del. 2015) (quoting Donnelly v. Commw. Fin. Sys., Inc., No. 3:07-CV-1881, 2008 WL 762085, at *4 (M.D. Pa. Mar. 20, 2008)); Zaloga v. Provident Life & Accident Ins. Co. of Am., 671 F. Supp. 2d 623, 633 (M.D. Pa. 2009) (same)). Allegations in plaintiff's complaint chronicling past transactions and disputes under the 2011 Settlement Agreement simply do not approach this threshold.

Nor do we find any of the challenged allegations to be "immaterial" or "impertinent." Matter is immaterial if it has "no essential or important relationship to the claim for relief or the defenses being pleaded." 5C WRIGHT & MILLER, *supra*, § 1382; Wagner, 101 F. Supp. 3d at 488. Impertinent material is that which "do[es] not pertain, and [is] not necessary, to the issues in question." 5C WRIGHT & MILLER, *supra*, § 1382; Wagner, 101 F. Supp. 3d at 488. Courts are generally in agreement that Rule 12(f) motions "should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action." 5C WRIGHT & MILLER, *supra*, § 1382 (collecting cases).

At this early stage, we cannot say that allegations about the parties' past disputes—all of which concern the 2011 Settlement Agreement that is also at issue here—"have no possible relation" to the present claim. See id. These allegations appear to provide pertinent contextual background and describe the genesis of

8

Amendment No. 3, interpretation and application of which will likely be central to the breach-of-contract claim in this case. Defendants have failed to identify any prejudice flowing from inclusion of this background information in the complaint. Moreover, we are mindful that, in the context of a motion to strike, any doubts about the challenged material must be resolved in favor of the nonmovant. 5C WRIGHT & MILLER, *supra*, § 1382. For all of these reasons, we conclude that the challenged paragraphs are neither immaterial nor impertinent.[1]

## IV. Conclusion

The court will deny defendants' motion (Doc. 12) to strike paragraphs 5 and 45 through 59 of plaintiff's complaint. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner, Chief Judge
United States District Court
Middle District of Pennsylvania

Dated: August 12, 2019

---

[1] Defendants also raise relevance objections, express concern for potential confusion of the issues and prejudice before the jury, and describe the challenged allegations as improper character evidence, invoking several of the Federal Rules of Evidence. (See Doc. 15 at 5; Doc. 19 at 3-10). We find these arguments to be premature. As at least one district court within the Third Circuit has recognized, "[a] court should not ordinarily strike a portion of a complaint based on evidentiary questions such as relevancy and admissibility 'on the sterile field of the pleadings alone' because they 'general[ly] require the context of an ongoing and unfolding trial to be properly decided.'" Aoki v. Benihana, Inc., 839 F. Supp. 2d 759, 764 (D. Del. 2012) (second alteration in original) (quoting Lipsky v. Commw. United Corp., 551 F.2d 887, 783 (2d Cir. 1976)). We decline to make such sweeping evidentiary determinations at this early stage. Nothing in this opinion, however, precludes defendants from challenging the admissibility of evidence supporting plaintiff's allegations under the Federal Rules of Evidence at the appropriate time.